Ivan Ditmars (Cal. Bar No. 359879)
CENTER FOR BIOLOGICAL DIVERSITY
2100 Franklin St., Ste. 375
Oakland, CA 94612
Phone: 510-844-7158
Email: iditmars@biologicaldiversity.org

Ryan Maher (*Pro hac vice pending*)
CENTER FOR BIOLOGICAL DIVERSITY
1411 K St. NW, Ste. 1300
Washington, D.C. 20005
Phone: 781-325-6303
Email: rmaher@biologicaldiversity.org

*Counsel for Plaintiffs Center for Biological Diversity, Center for Environmental Health*

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY and CENTER FOR ENVIRONMENTAL HEALTH,<br><br>Plaintiffs,<br><br>v.<br><br>LEE ZELDIN,<br><br>in his official capacity as Administrator, United States Environmental Protection Agency,<br><br>Defendant. | Civil Action No. _____<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**<br><br>(Clean Air Act, 42 U.S.C. §§ 7401 *et. seq.*) |

# INTRODUCTION

1. This is a Clean Air Act "deadline" suit against Lee Zeldin, in his official capacity as Administrator of the United States Environmental Protection Agency (EPA), for his failure to perform mandatory duties which will protect people, ecosystems, and wildlife from dangerous exposure to ozone air pollution.

2. Ground-level ozone is the principal component of what people commonly refer to as smog. Ozone pollution can cause decreased lung function, increased respiratory symptoms, emergency department visits, hospital admissions for respiratory causes, and even premature mortality. Those most at risk from ozone pollution are children; active people, *e.g.,* runners and people who do manual labor outside; people with pre-existing lung and heart diseases such as asthma; and older people.

3. Ozone also damages vegetation, both native vegetation and commercial crops. Damage to native vegetation results in ecosystem damage, including diminished ecosystem services, that is, the life-sustaining services that ecosystems provide to people for free, such as clean air, clean water, and carbon sequestration.

4. To better protect the public from the damage caused by ozone pollution, the EPA promulgated revised ozone National Ambient Air Quality Standards (NAAQS) in 2008 and again in 2015. EPA then designated areas with ambient air monitors showing ozone concentrations in excess of these NAAQS as "nonattainment" areas. The Clean Air Act provides that nonattainment areas can have different classifications, depending on how severe their pollution problem is, and it sets the timelines by which these areas must attain the relevant standard, here the 2008 and the 2015 Ozone NAAQS, or else be classified to a worse nonattainment classification.

5. The promulgation of each set of Ozone NAAQS created various mandatory duties that EPA, as well as states, must perform in order to effectively implement the standard as Congress intended.

6. Each state, or the designated air regulator, must submit a State Implementation Plan (SIP) with discrete elements that address pollution. The statute then sets a timeline according to which EPA must either approve or disapprove these SIP elements.

7. In the event that EPA does disapprove, in whole or in part, a state's SIP submittal, the statute then requires that EPA, within two years, either promulgate its own Federal Implementation Plan (FIP) or finalize a new and approved SIP.

8. Numerous SIP elements, submitted by both the Mojave Desert Air Quality Management District (California) and the State of Colorado for the West Mojave Desert and Denver Metro / North Front Range nonattainment areas, respectively, have now languished before EPA, without receiving final approval or disapproval, for years. Additionally, EPA has failed to promulgate a FIP for Colorado, after partially disapproving its SIP two years ago.

9. Plaintiffs CENTER FOR BIOLOGICAL DIVERSITY and CENTER FOR ENVIRONMENTAL HEALTH therefore bring this action against Defendant LEE ZELDIN, in his official capacity as EPA Administrator, to compel him to perform his mandatory duties with respect to Colorado and California's SIPs, as well as the FIP required in Colorado.

## JURISDICTION

10. This case is a Clean Air Act citizen suit. Therefore, the Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 42 U.S.C. § 7604(a) (Clean Air Act citizen suits).

11. This case does not concern federal taxes, is not a proceeding under 11 U.S.C. §§ 505 or 1146, and does not involve the Tariff Act of 1930. Thus, this Court has jurisdiction to order declaratory relief under 28 U.S.C. § 2201. If the Court orders declaratory relief, 28 U.S.C. § 2202 authorizes this Court to issue injunctive relief.

## NOTICE

12. Plaintiffs Center for Biological Diversity and Center for Environmental Health mailed to EPA by certified mail, return receipt requested, written 60-day notice of their intent to sue regarding the violations alleged herein. 42 U.S.C. § 7604(b)(2). The notice letter was postmarked July 31, 2025. *See* 40 C.F.R. § 54.2(d) (providing that notice is given on the postmark date, if served by mail). EPA received it no later than August 6, 2025. More than 60 days have passed since Plaintiffs mailed this notice letter. EPA has not remedied the violations alleged in this Complaint. Therefore, an actual controversy exists between the parties.

## VENUE

13. Venue is proper in this Court under 28 U.S.C. § 1391(e) for several reasons. First, Plaintiff Center for Environmental Health resides in the district, with its headquarters in Oakland, California, which is in the Northern California judicial district. Second, Defendant EPA has an office and performs its official duties in this district. EPA's Region 9 headquarters are located at 75 Hawthorne Street, San Francisco, California. Third, a substantial part of the events or omissions giving rise to the claims in this case occurred in the Northern District of California.

## DIVISIONAL ASSIGNMENT

14. Pursuant to Civil L.R. 3-2(c) and (d), this case is properly assigned to the San Francisco or Oakland Division of this Court because a substantial part of the events and omissions giving rise to the claims in this case occurred in the County of San Francisco, where EPA Region 9 is headquartered.

## PARTIES

15. Plaintiff CENTER FOR BIOLOGICAL DIVERSITY is a non-profit 501(c)(3) corporation incorporated and existing under the laws of the State of California, with its main California office in Oakland. The Center for Biological Diversity has over 93,000 members throughout the United States and the world. The Center for Biological Diversity's mission is to ensure the preservation, protection, and restoration of biodiversity, native species, ecosystems, public lands and waters, and public health through science, policy, and environmental law. Based on the understanding that the health and vigor of human societies and the integrity and wildness of the natural environment are closely linked, the Center for Biological Diversity is working to secure a future for animals and plants hovering on the brink of extinction, for the ecosystems they need to survive, and for a healthy, livable future for all of us.

16. Plaintiff CENTER FOR ENVIRONMENTAL HEALTH is a nonprofit corporation organized and existing under the laws of the State of California, with its headquarters located in Oakland. The Center for Environmental Health protects the public from toxic chemicals by working with communities, consumers, workers, government, and the private sector to demand and support business practices that are safe for public health and the environment. The Center for

Environmental Health works in pursuit of a world in which all people live, work, learn, and play in healthy environments.

17. Plaintiffs' members live, work, recreate, travel, and engage in other activities throughout the Denver Metro / North Front Range and West Mojave Desert ozone nonattainment areas at issue in this Complaint, and will continue to do so on a regular basis. Plaintiff Center for Biological Diversity has over 1,700 members that reside within the boundaries of the Denver Metro / North Front Range area and over 100 members in the West Mojave Desert area. EPA itself has determined that the ozone air pollution within these areas exceeds limits that are requisite to protect public health and the environment, by violating the 2008 and 2015 ozone National Ambient Air Quality Standards. Ozone pollution in these areas threatens and damages, and will continue to threaten and damage, the health and welfare of Plaintiffs' members, as well as their ability to engage in and enjoy their other activities. Ozone pollution diminishes Plaintiffs' members' ability to enjoy the aesthetic qualities and recreational opportunities of the affected areas.

18. EPA's failure to act harms Plaintiffs' members by prolonging poor air quality conditions that adversely affect or threaten their health, and by nullifying or delaying measures and procedures mandated by the Act to protect their health from ozone pollution in places where they live, work, travel, and recreate.

19. EPA's failure to act further harms Plaintiffs' members' welfare interest in using and enjoying the natural environment. Elevated levels of ozone damage plant life, aquatic life, natural ecosystems, and visibility, thus harming Plaintiffs' members' recreational and aesthetic interests.

20. EPA's failure to timely perform the mandatory duties described herein also adversely affects Plaintiffs, as well as their members, by depriving them of procedural protections and opportunities, as well as information that they are entitled to under the Clean Air Act.

21. The above injuries will continue until the Court grants the relief requested herein. A court order requiring EPA to promptly undertake its mandatory duties by dates certain would redress Plaintiffs' and Plaintiffs' members' injuries.

22. Defendant LEE ZELDIN is the Administrator of the EPA. Administrator Zeldin is charged with the duty to implement the Clean Air Act and to take required regulatory actions according to the schedules established by the Act, including the mandatory duties at issue in this case. Administrator Zeldin is sued in his official capacity.

## FACTUAL BACKGROUND: OZONE

23. Ozone ($O_3$) is a "harmful air pollutant" that is the main component in "smog." *See* Ground-level Ozone Pollution: Ground-level Ozone Basics, EPA, https://www.epa.gov/ground-level-ozone-pollution/ground-level-ozone-basics (last visited November 5, 2025). Ozone is formed at ground level when Nitrogen Oxides (NOx) and volatile organic compounds (VOCs) react in sunlight. *Id.* Since ozone can travel far depending on wind patterns, even rural areas, far removed from sources of NOx and VOCs, can reach dangerous ozone levels. *Id.*; Review of the Ozone National Ambient Air Quality Standards, 85 Fed. Reg. 87256, 87263 (December 31, 2020).

24. Ozone pollution contributes to respiratory problems by impacting lung function and aggravating asthma, particularly for children and the elderly. *Id.* at 87,268. There is also

evidence for links between ozone exposure and effects on human metabolic and cardiovascular health. *Id.*

25.     Ozone also impacts the environment. Acute and chronic exposures to ozone lead to foliar injury, decreased photosynthesis, and decreased vegetation growth. *Id.* at 87,310. The reduction in tree growth can, in turn, damage ecosystem services such as "aesthetic value; provision of food, fiber, timber, other forest products, habitat, and recreational opportunities; climate and water regulation; erosion control; air pollution removal, and desired fire regimes." *Id.* at 87,312.

26.     These harms to humans and the ecosystems they depend on can be prevented if EPA follows Congress's directives and fully implements the 2008 and 2015 Ozone NAAQS in California and Colorado.

**STATUTORY AND REGULATORY BACKGROUND**

27.     Congress enacted the Clean Air Act to "*speed up*, expand, and intensify the war against air pollution in the United States with a view to assuring that the air we breathe throughout the Nation is wholesome once again." H.R.Rep. No. 1146, 91st Cong., 2d Sess. 1,1, 1970 U.S. Code Cong. & Admin. News 5356, 5356 (emphasis added). To promote this, the Act requires EPA to set National Ambient Air Quality Standards (NAAQS) for certain pollutants, including ozone. 42 U.S.C. §§ 7408, 7409; 40 C.F.R. §§ 50.15, 50.19. National Ambient Air Quality Standards establish maximum allowable concentrations of these pollutants in the air.

28.     Each NAAQS must be stringent enough to protect public health and welfare. 42 U.S.C. § 7409(b)(1), (b)(2). Effects on welfare include, but are not limited to, effects on soils, water,

vegetation, manmade materials, wildlife, visibility (*i.e.*, haze), climate, damage to property, economic impacts, and effects on personal comfort and well-being. 42 U.S.C. § 7602(h).

29. In 2008, EPA strengthened the primary and secondary ozone NAAQS, including by setting a level of 0.075 parts per million. 73 Fed. Reg. 16,436 (Mar. 27, 2008); 40 C.F.R. § 50.15.

30. In 2015, EPA again strengthened the primary and secondary ozone NAAQS from 0.075 to 0.070 parts per million. 80 Fed. Reg. 65,292 (Oct. 26, 2015); 40 C.F.R. § 50.19.

31. After EPA sets or revises a standard, the Clean Air Act requires EPA to take steps to implement the standard. Within two years of revising a standard, EPA must "designate" areas as not meeting the standard, known as "nonattainment"; meeting the standard, known as "attainment"; or "unclassifiable." 42 U.S.C. § 7407(d)(1)(A)-(B).

32. For each area designated nonattainment, states must develop a plan to attain the NAAQS. These plans, which must be submitted to EPA, are called State Implementation Plans (SIPs). *See* 42 U.S.C. §§ 7410(a)(2)(I), 7501 – 7509a, 7514 – 7514a. SIPs to attain the NAAQS in areas designated as nonattainment are known as nonattainment SIPs. These nonattainment SIPs must include various elements under the Clean Air Act.

33. If a state submits a SIP submittal or SIP revision to EPA, EPA must determine whether the submittal is complete no later than six months after the agency receives the submittal. 42 U.S.C. § 7410(k)(1)(B). If EPA does not make a completeness determination within six months, the submittal is deemed complete by operation of law. *Id*.

34. Within twelve months of a SIP submittal being deemed complete by EPA or by operation of law, EPA must act on the submission. *Id*. § 7410(k)(2). EPA must act by approving or

disapproving the SIP submittal, in whole or in part, or conditionally approving the submittal. *Id.* § 7410(k)(3)–(4).

35.  If EPA "disapproves a State implementation plan submission in whole or in part" the Administrator has a nondiscretionary duty to promulgate a Federal Implementation Plan ("FIP") that fills the gap within two years of the disapproval. 42 U.S.C. § 7410(c)(1). Alternatively, EPA can finalize a SIP that remedies the deficiency and thereby obviate its obligation to promulgate a FIP. *Id.*

## CLAIM ONE

### (Failure to take final action on California's SIP Submittals)

36.  Plaintiffs incorporate by reference all paragraphs listed above.

37.  EPA designated the West Mojave Desert, California, area, as in "severe" nonattainment for the 2015 Ozone NAAQS effective August 3, 2018. 83 Fed. Reg. 25,776, 25,786 (June 4, 2018).

38.  California submitted forty-six SIP elements to EPA for West Mojave Desert to meet the requirements of the area's severe nonattainment classification on August 7, 2020. These SIP elements, which include various reasonably available control technology (RACT) standards, are fully listed in Table 1 below.

**Table 1 – West Mojave Desert SIP Elements**

| SIP Element | Date Submitted | Missed EPA Deadline |
|---|---|---|
| RACT Non-CTG VOC for Major Sources - Severe 15 | 08/07/2020 | 02/07/2022 |
| RACT NOX for Major Sources - Severe 15 | 08/07/2020 | 02/07/2022 |
| RACT VOC CTG Aerospace | 08/07/2020 | 02/07/2022 |
| RACT VOC CTG Auto and Light-Duty Truck Assembly Coatings (2008) | 08/07/2020 | 02/07/2022 |
| RACT VOC CTG Bulk Gasoline Plants | 08/07/2020 | 02/07/2022 |

| | | |
|---|---|---|
| RACT VOC CTG Factory Surface Coating of Flat Wood Paneling | 08/07/2020 | 02/07/2022 |
| RACT VOC CTG Fiberglass Boat Manufacturing Materials (2008) | 08/07/2020 | 02/07/2022 |
| RACT VOC CTG Flat Wood Paneling Coatings (2006) | 08/07/2020 | 02/07/2022 |
| RACT VOC CTG Flexible Packaging Printing Materials (2006) | 08/07/2020 | 02/07/2022 |
| RACT VOC CTG Fugitive Emissions from Synthetic Organic Chemical Polymer and Resin Manufacturing Equipment | 08/07/2020 | 02/07/2022 |
| RACT VOC CTG Graphic Arts - Rotogravure and Flexography | 08/07/2020 | 02/07/2022 |
| RACT VOC CTG Industrial Cleaning Solvents (2006) | 08/07/2020 | 02/07/2022 |
| RACT VOC CTG Large Appliance Coatings (2007) | 08/07/2020 | 02/07/2022 |
| RACT VOC CTG Large Petroleum Dry Cleaners | 08/07/2020 | 02/07/2022 |
| RACT VOC CTG Leaks from Gasoline Tank Trucks and Vapor Collection Systems | 08/07/2020 | 02/07/2022 |
| RACT VOC CTG Leaks from Petroleum Refinery Equipment | 08/07/2020 | 02/07/2022 |
| RACT VOC CTG Lithographic Printing Materials and Letterpress Printing Materials (2006) | 08/07/2020 | 02/07/2022 |
| RACT VOC CTG Manufacture of High-Density Polyethylene, Polypropylene, and Polystyrene Resins | 08/07/2020 | 02/07/2022 |
| RACT VOC CTG Manufacture of Pneumatic Rubber Tires | 08/07/2020 | 02/07/2022 |
| RACT VOC CTG Manufacture of Synthesized Pharmaceutical Products | 08/07/2020 | 02/07/2022 |
| RACT VOC CTG Metal Furniture Coatings (2007) | 08/07/2020 | 02/07/2022 |
| RACT VOC CTG Miscellaneous Industrial Adhesives (2008) | 08/07/2020 | 02/07/2022 |
| RACT VOC CTG Miscellaneous Metal Products Coatings (2008) | 08/07/2020 | 02/07/2022 |

| | | |
|---|---|---|
| RACT VOC CTG Oil and Natural Gas Industry (2016) | 08/07/2020 | 02/07/2022 |
| RACT VOC CTG Paper, Film, and Foil Coatings (2007) | 08/07/2020 | 02/07/2022 |
| RACT VOC CTG Petroleum Liquid Storage in External Floating Roof Tanks | 08/07/2020 | 02/07/2022 |
| RACT VOC CTG Plastic Parts Coatings (2008) | 08/07/2020 | 02/07/2022 |
| RACT VOC CTG Refinery Vacuum Producing Systems, Wastewater Separators, and Process Unit Turnarounds | 08/07/2020 | 02/07/2022 |
| RACT VOC CTG Shipbuilding/repair | 08/07/2020 | 02/07/2022 |
| RACT VOC CTG SOCMI Air Oxidation Processes | 08/07/2020 | 02/07/2022 |
| RACT VOC CTG SOCMI Distillation and Reactor Processes | 08/07/2020 | 02/07/2022 |
| RACT VOC CTG Solvent Metal Cleaning | 08/07/2020 | 02/07/2022 |
| RACT VOC CTG Stage I Vapor Control Systems - Gasoline Service Stations | 08/07/2020 | 02/07/2022 |
| RACT VOC CTG Storage of Petroleum Liquids in Fixed Roof Tanks | 08/07/2020 | 02/07/2022 |
| RACT VOC CTG Surface Coating for Insulation of Magnet Wire | 08/07/2020 | 02/07/2022 |
| RACT VOC CTG Surface Coating of Automobiles and Light-Duty Trucks | 08/07/2020 | 02/07/2022 |
| RACT VOC CTG Surface Coating of Cans | 08/07/2020 | 02/07/2022 |
| RACT VOC CTG Surface Coating of Coils | 08/07/2020 | 02/07/2022 |
| RACT VOC CTG Surface Coating of Fabrics | 08/07/2020 | 02/07/2022 |
| RACT VOC CTG Surface Coating of Large Appliances | 08/07/2020 | 02/07/2022 |
| RACT VOC CTG Surface Coating of Metal Furniture | 08/07/2020 | 02/07/2022 |
| RACT VOC CTG Surface Coating of Miscellaneous Metal Parts and Products | 08/07/2020 | 02/07/2022 |
| RACT VOC CTG Surface Coating of Paper | 08/07/2020 | 02/07/2022 |

| | | |
|---|---|---|
| RACT VOC CTG Tank Truck Gasoline Loading Terminals | 08/07/2020 | 02/07/2022 |
| RACT VOC CTG Use of Cutback Asphalt | 08/07/2020 | 02/07/2022 |
| RACT VOC CTG Wood Furniture | 08/07/2020 | 02/07/2022 |
| Contingency Measures VOC and NOX | 11/13/2023 | 05/13/2025 |
| Contingency Provisions for RFP Milestones 182(c)(9) | 11/13/2023 | 05/13/2025 |

39. These submittals were deemed complete, at the latest, by operation of law six months after this submission date, that is February 7, 2021. 42 U.S.C. § 7410(k)(1)(B). EPA was required to take final action on the submittal, at the latest, twelve months after this date, by February 7, 2022. *Id*. § 7410(k)(2)–(4).

40. California submitted another two SIP elements to EPA for West Mojave Desert to meet the requirements of the area's severe nonattainment classification on November 13, 2023. These SIP elements addressing contingency measure requirements are also included in Table 1 above. EPA was required to take final action on the submittal, at the latest, by May 13, 2025. 42 U.S.C. § 7410(k)(1)–(4).

41. EPA has not acted on either the August 7, 2020 submittals or the November 13, 2023 submittals by the respective due dates and therefore is in violation of its mandatory duty.

## CLAIM TWO

**(Failure to take final action on Colorado's SIP Elements for the Denver Metro / North Front Range area for the 2008 Ozone NAAQS)**

42. Plaintiffs incorporate by reference all paragraphs listed above.

43. EPA classified the Denver Metro / North Front Range, Colorado, area, as in severe nonattainment for the 2008 Ozone NAAQS effective November 7, 2022. 87 Fed. Reg. 60,926 60,927 (Oct. 7, 2022).

44. Colorado submitted several SIP elements necessary to meet certain of its obligations pertaining to the Denver Metro / North Front Range severe nonattainment area for the 2008 Ozone NAAQS on June 26, 2023. 90 Fed. Reg. 19,447, 19,448 n.1 (May 8, 2025). EPA deemed this submittal complete on September 7, 2024. *Id.*

45. EPA was required to take final action by approving or disapproving, in whole or in part, this SIP submittal, within twelve months of its completeness determination, or by September 7, 2024. 42 U.S.C. § 7410(k)(2)–(4).

46. The elements that EPA has failed to act on include severe SIP elements specific to enhanced monitoring, reasonably available control technology (RACT), reasonably available control measures (RACM), motor vehicle inspection and maintenance (I/M), nonattainment new source review (NNSR), contingency measures, clean fuel fleet program, vehicle miles travelled offset demonstration, and the major source fee program.

47. EPA is in violation of its mandatory duty to take action on these submittals.

## CLAIM THREE

**(Failure to take final action on Colorado's SIP Elements for the Denver Metro / North Front Range area for the 2015 Ozone NAAQS)**

48. Plaintiffs incorporate by reference all paragraphs listed above.

49. EPA classified the Denver Metro / North Front Range, Colorado, area, as in moderate nonattainment for the 2015 Ozone NAAQS effective November 7, 2022. 87 Fed. Reg. 60,897, 60,916 (October 7, 2022).

50. Colorado submitted several SIP elements necessary to meet certain of its obligations pertaining to the Denver Metro / North Front Range severe nonattainment area for the 2015 Ozone NAAQS on June 26, 2023. 90 Fed. Reg. 19,447, 19,448 n.1 (May 8, 2025). EPA deemed this submittal complete on September 7, 2024. *Id.*

51. EPA was required to take final action by approving or disapproving, in whole or in part, this SIP submittal, within twelve months of its completeness determination, or by September 7, 2024. 42 U.S.C. § 7410(k)(2)–(4).

52. The elements that EPA has failed to act on include moderate SIP elements specific to emission inventories, enhanced monitoring, rate of progress, reasonably available control technology (RACT), motor vehicle inspection and maintenance (I/M), nonattainment new source review (NNSR), and motor vehicle emissions budgets (MVEB).

53. EPA is in violation of its mandatory duty to take action on these submittals.

## CLAIM FOUR

### (Failure to take final action on Colorado's Additional SIP Revisions)

54. Plaintiffs incorporate by reference all paragraphs listed above.

55. On June 26, 2023, Colorado also submitted five other SIP revisions. 90 Fed. Reg. 19,447, 19,448 n.1 (May 8, 2025). These revisions are detailed in Table 2 below. EPA also deemed these submittals complete on September 7, 2024. *Id.*

**Table 2 – Additional Colorado SIP Revisions**

| | |
|---|---|
| **Revisions to Regulation 3** | Revisions included requirements for a major source fee program should Colorado not attain the 2008 NAAQS by the applicable severe attainment date, revisions to supplement the emission statement requirement of Section 182(a)(3)(B) of the CAA, revisions to correspond to EPA's correction amendments in 40 CFR Part 51, |

| | |
|---|---|
| | revisions to correspond to public notice in 40 CFR Part 70, and other revisions aligning with current practice and for clean-up. The revisions also included revisions requested for hearing in May to update Part A to reflect the current APEN, emission, and permit processing fees as provided in CRS Sections 24-7-114.1 and 24-7-114.7, but not to include fees on greenhouse gas (GHG) emissions; to include 1-bromopropane (1-BP) on the list of reportable hazardous air pollutants (HAP) to reflect EPA's addition of 1-BP to the federal list of HAPs; and include GHGs on specific air pollutant emission notices (APEN) as directed in CRS Section 25-7-114.1 by HB 21-1266. |
| **Revisions to Regulation 7** | Revisions included provisions that require the implementation of RACT for major sources of VOC or NOx in the DMNFR and/or northern Weld County; establish VOC content limits for certain automotive materials; establish VOC content limits for certain automotive coatings should Colorado not attain the 2015 NAAQS by the applicable moderate attainment date; include specific oil and gas requirements for certain 1,000 hp engines, new facility pneumatic controllers, and hydrocarbon liquids loadout in the SIP as SIP-strengthening measures; clarify the applicability of Regulation Number 7 to newly classified ozone nonattainment areas; update the ozone nonattainment area maps and descriptions to reflect the designation of northern Weld County to nonattainment under the 2015 NAAQS; and revise the gasoline tank truck testing requirements. |
| **Revisions to Regulation 21** | Revisions included new and revised VOC content limits for consumer products should Colorado not attain the 2008 NAAQS by the applicable severe attainment date. |
| **Revisions to Common Provisions** | Revisions updated definitions and citations, make the annual adjustment to penalty fees as directed by HB 20-1143, and to further address the affirmative defense provisions identified in EPA's start-up, shutdown, and malfunction (SSM) SIP Call. |
| **Revisions to Air Quality Standards, Designations and Emission Budgets** | Revisions to satisfy the transportation conformity requirements of Section 176(c) of the CAA and include motor vehicle emission budgets (MVEB) for use in the Moderate SIPs and proposed revisions to update the ozone attainment area maps and descriptions to reflect the designation of |

| | |
|---|---|
| | northern Weld County to nonattainment under the 2015 NAAQS. |

56. EPA was required to take final action by approving or disapproving, in whole or in part, this SIP submittal, within twelve months of its completeness determination, or by September 7, 2024. 42 U.S.C. § 7410(k)(2)–(4).

57. EPA is in violation of its mandatory duty to take action on these submittals.

## CLAIM FIVE

**(Failure to promulgate overdue FIP for the Denver Metro / North Front Range area)**

58. Plaintiffs incorporate by reference all paragraphs listed above.

59. On May 9, 2023, EPA finalized a limited disapproval of a SIP submittal submitted by Colorado to address the requirements of the Denver Metro / North Front Range's prior status as a serious nonattainment area for the 2008 Ozone NAAQS. 88 Fed. Reg. 29,827 (May 9, 2023).

60. EPA disapproved the SIP revisions—submitted by Colorado on May 14, 2018; May 13, 2020; March 22, 2021; May 18, 2021; and May 20, 2022—citing their lack of "sufficient reporting requirements," which illegally undermine the ability of the public to enforce the rules being incorporated into Colorado's SIP. *Id*. at 29,828.

61. EPA was required to promulgate a FIP within two years of the June 8, 2023, effective date of the disapproval, or by June 8, 2025. *See id*. at 29,828–29 (EPA acknowledging this requirement and timeframe); 42 U.S.C. § 7410(c)(1).

62. EPA has not promulgated a FIP as of the date of filing this complaint, nor has EPA taken final action on a new Colorado SIP revision that obviates EPA's duty to promulgate a FIP.

63. EPA is in violation of its mandatory duty either to promulgate a FIP or to finalize a revised SIP that addresses the deficiencies in the RACT requirements for the Denver Metro /

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF                                                           17

North Front Range's serious nonattainment classification for the 2008 Ozone NAAQS.

## RELIEF REQUESTED

Plaintiffs respectfully request that the Court:

(A) Declare that the Administrator is in violation of the Clean Air Act with regard to his failure to perform each mandatory duty listed above;

(B) Issue a mandatory injunction requiring the Administrator to perform his mandatory duties by certain dates;

(C) Retain jurisdiction of this matter for purposes of enforcing and effectuating the Court's order;

(D) Grant Plaintiffs their reasonable costs of litigation, including attorneys' and expert fees; and

(E) Grant such further relief as the Court deems just and proper.

Dated: November 20, 2025

Respectfully Submitted,

/s/ *Ivan Ditmars*
Ivan Ditmars (Cal. Bar No. 359879)
CENTER FOR BIOLOGICAL DIVERSITY
2100 Franklin St., Ste. 375
Oakland, CA 94612
Phone: 510-844-7158
Email: iditmars@biologicaldiversity.org

Ryan Maher (*Pro hac vice pending*)
CENTER FOR BIOLOGICAL DIVERSITY
1411 K St. NW, Ste. 1300
Washington, D.C. 20005
Phone: 781-325-6303
Email: rmaher@biologicaldiversity.org

*Counsel for Plaintiffs Center for Biological Diversity and Center for Environmental Health*